UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL PACK,

                                            Plaintiff,

                                                                       DECISION AND ORDER

                                                                       07-CV-6344L

               v.

STANLEY BUKOWSKI,
LUCIEN J. LE CLAIRE,

                                            Defendants.
_____

       Plaintiff, Michael Pack, commenced this action pursuant to 42 U.S.C. § 1983.[1] Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), asserts claims under the Eighth Amendment to the United States Constitution against Stanley Bukowski and Lucien Leclaire, who at all relevant times were a physician employed by DOCS and the Acting Commissioner of DOCS.

       Defendants have moved for summary judgment. For the reasons that follow, the motion is granted.

---

[1] Plaintiff commenced the action *pro se*. The Court appointed counsel to represent plaintiff on April 4, 2008 (Dkt. #24).

## FACTUAL BACKGROUND

Plaintiff is currently serving a term of imprisonment of twenty years to life for first degree murder. He has been incarcerated since 1997.

In 2003, plaintiff came to believe that he was suffering from gender identity disorder ("GID"), also known as gender dysphoria. Persons with GID can "believe that they are cruelly imprisoned within a body incompatible with their real gender identity," and may have a "desire to change [their] anatomic sexual features to conform physically with [their] perception of [themselves]." *Powell v Schriver*, 175 F.3d 107, 111 (2d Cir. 1999) (internal quotation marks omitted). Plaintiff, who was born, and remains, a male, alleges that he "believe[s] that [he is] a woman trapped in a man's body." Plaintiff's Aff. (Dkt. #45) ¶ 3.

In 2005, plaintiff was transferred to Wende Correctional Facility. In November 2006, he was seen by Dr. Bukowski at Wende, at which time plaintiff requested hormone treatment (specifically estrogen) for GID. Plaintiff alleges that Dr. Bukowski denied his request in January 2007.

At that time, the DOCS Health Services Policy Manual § 1.31 ("Policy 1.31") stated that DOCS would only provide GID treatment for inmates who had been diagnosed with, and received hormonal therapy for, GID prior to their incarceration. Plaintiff has never been diagnosed with GID, before or during his incarceration.

Plaintiff filed the complaint in this action on April 27, 2007. Plaintiff states that he seeks damages for "emotional and mental anguish," as well as injunctive relief in the form of an order directing that he be provided with estrogen treatment. Complaint (Dkt. #4-3) at 5.[2]

While this action was pending, on January 3, 2008, DOCS modified Policy 1.31 to provide that a diagnosis of GID, as a precondition for treatment, "can be established prior to admission or upon referral to a psychiatrist with specific expertise in this disorder." Dkt. #33 ¶ 26. In February 2008, Dr. Bukowski referred plaintiff for a psychiatric evaluation "in an effort to establish a diagnosis relative to [plaintiff's] complaints related to gender issues," but plaintiff refused to go for the scheduled evaluation. Dkt. #34 Ex. A. Apparently, plaintiff believed that consenting to the evaluation might somehow prejudice his pending lawsuit, because the evaluation had not been ordered or sanctioned by the Court. Plaintiff testified at his deposition in this case that he thought that in light of the pending litigation over these matters, "anything to be done outside of the presence of the court is not the way to go." Dkt. #38 at 47.

---

[2]Although plaintiff, through his attorney, states in his memorandum of law in opposition to defendants' motion that plaintiff is not simply seeking to be provided with female hormones, but to obtain an "evaluation [of his] gender identity issues," Dkt. #47 at 3, it is clear from the complaint and from the administrative record in this case that what plaintiff has consistently sought is hormone treatment, and that it was the denial of female hormones that specifically prompted this lawsuit. There is no evidence in the record that mental health services in general have not been made available to plaintiff.

**DISCUSSION**

**I. General Principles**

The gist of plaintiff's claims in this case is that defendants have denied him adequate medical care, in violation of his rights under the Eighth Amendment to the United States Constitution. To show that prison medical treatment was so inadequate as to amount to "cruel or unusual punishment" prohibited by the Eighth Amendment, plaintiff must prove that defendants' actions or omissions amounted to "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

"Courts have repeatedly held that treatment of a psychiatric or psychological condition may present a 'serious medical need.'" *Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir. 2000) (assuming for purposes of prisoner's appeal that "her transsexualism constitutes a serious medical condition") (quoting *Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987)). Among the relevant factors for determining whether a serious medical need exists is "the presence of a medical condition that significantly affects an individual's daily activities." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted).

As to the "deliberate indifference" component, the Supreme Court explained in *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991), that this standard includes both an objective and a subjective component. With respect to the objective aspect, the court must ask whether there has been a sufficiently serious deprivation of the prisoner's constitutional rights. With respect to the subjective element, the court must consider whether the deprivation was brought about by defendants in wanton

disregard of those rights. *Id.* To establish deliberate indifference, therefore, plaintiff must prove that the defendants had a culpable state of mind and intended wantonly to inflict suffering. *See id.* at 299; *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991); *Ross v. Kelly*, 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992).

The Court in *Estelle* also cautioned that mere negligence is not actionable. "A [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind," *id.* at 102, or "incompatible with the evolving standards of decency that mark the progress of a maturing society," *id.* at 105-06. It is clear, then, that allegations of malpractice alone do not state a constitutional claim. *Id.* at 106 n.14; *Chance*, 143 F.3d at 703-04; *Ross*, 784 F.Supp. at 44.

Likewise, an inmate's "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703; *see also Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) ("The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion").

**II. Application to this Case**

Applying these principles to the case at bar, I find that defendants are entitled to summary judgment. Even assuming that plaintiff could show that he suffers from a serious medical need–and

I do not believe that he has made such a showing–he cannot show that defendants were deliberately indifferent to that need.

First, as to the existence of a serious medical need, all that plaintiff has presented is his assertion that he has suffered a "high level of [psychological] discomfort ... living in a man's body." Plaintiff's Aff. (Dkt. #45) ¶ 15. Plaintiff's conclusory allegations do not demonstrate that he suffers from an objectively serious medical need, however, particularly in the light of the contradictory evidence in the record, including plaintiff's own deposition testimony indicating that he is generally in good mental and physical health, and that he is generally well adjusted, which is corroborated by the other medical evidence in the record. *See* Depo. Tr. (Dkt. #35 Ex. A) at 3-4, 28-30, 42. *See Manning v. Goord*, No. 05-CV-850, 2010 WL 883696, at *11 (W.D.N.Y. Mar. 8, 2010) (prisoner who alleged that defendants' failure to treat her GID had rendered her emotionally distraught and depressed, causing her to become suicidal and to contemplate self-mutilation, failed to establish that she suffered from a serious medical condition, where "the record [wa]s devoid of any evidence establishing Plaintiff's mental state had actually deteriorated consistent with these allegations"); *Lewis v. Berg*, No. 9:00-CV-1433, 2006 WL 1064174, at *5 (N.D.N.Y. Apr. 20, 2006) (dismissing claim by inmate who allegedly suffered from GID, and noting that inmate "consistently received good reviews and statements that she was well-adjusted, with no serious mental problems"); *see also Kosilek v. Maloney*, 221 F.Supp.2d 156, 184 (D.Mass. 2002) ("A gender identity disorder is not ... necessarily a serious medical need for which the Eighth Amendment requires treatment"). *Cf. De'Lonta v. Angelone*, 330 F.3d 630, 634-35 (4th Cir. 2003) (inmate's need for protection against compulsive self-mutilation following cessation of her hormone therapy for GID constituted a serious

medical need); *Sundstrom v. Frank*, No. 06-C-112, 2007 WL 3046240, at *3 n.4 (E.D.Wis. Oct. 15, 2007) (noting that "*[s]ome ... individuals suffer so profoundly without effective GID treatment that they mutilate their own genitals*") (emphasis added).[3]

Even assuming that plaintiff could demonstrate such a need, however, his claim would fail, because he has not demonstrated the existence of any genuine issues of material fact as to the deliberate-indifference component of his claim. The undisputed evidence shows that Dr. Bukowski, who states that he is "not experienced with GID patients," Dkt. #34 ¶ 9, consulted with his superiors about plaintiff's alleged condition, and directed that plaintiff undergo an evaluation by a psychiatrist. Plaintiff refused to submit to that evaluation, however, for reasons that apparently had more to do with litigation strategy or concerns than with any actual or perceived medical need.

Given that refusal, it was hardly unreasonable for Dr. Bukowski not to simply accept the word of plaintiff, a layperson, that he needed hormone therapy. If it were otherwise, prisoners would be able to obtain drugs at will simply by insisting that they need them. That is not the standard under the Eighth Amendment. *See Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (prisoner's subjective belief that he needed additional medication was insufficient to establish constitutional violation); *see also Cuoco*, 222 F.3d at 111 (physician's "refusal to intervene in the medical treatment of another doctor's patient [a pretrial detainee] simply because the [detainee] demanded it was objectively reasonable as a matter of law").

---

[3]Plaintiff alleges that he "ha[s] been routinely harassed by other inmates and staff" because of his "insist[ence] that [he is a] woman ... ." Dkt. #45 ¶ 19. Even assuming that the harassment could be viewed as giving rise to a serious *medical* need, I fail to see how the relief sought here–the administration of female hormones–would alleviate that problem.

While acknowledging that Dr. Bukowski did schedule plaintiff for a psychiatric referral in 2008–after Policy 1.31 was modified–plaintiff argues that his rights were also violated when he was denied treatment prior to 2008. Plaintiff's argument appears to be that defendants blindly followed that policy, without even attempting to assess whether plaintiff had a genuine medical need for treatment, because plaintiff had not been diagnosed with GID prior to his incarceration.

Although plaintiff's medical records do indicate that Bukowski cited the then-existing DOCS policy in connection with an evaluation of plaintiff in November 2006, *see* Dkt. #34 Ex. A, Dr. Bukowski's notes from that visit also show that he "check[ed plaintiff's] hormonal status" and "[r]efer[red plaintiff] to mental health." *Id.* That certainly does not demonstrate that Dr. Bukowski was deliberately indifferent to plaintiff's complaints, that he simply dismissed plaintiff's complaints out of hand, or that he acted with a culpable state of mind, under the standards applicable to an Eighth Amendment claim.

I also conclude that even if a violation of plaintiff's rights could be found, defendants would be entitled to qualified immunity from liability for their actions. Qualified immunity shields public officials "from civil damages liability insofar as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,' or insofar as 'it [is] objectively reasonable for them to believe that their acts d[o] not violate those rights.'" *Simms v. Village of Albion*, 115 F.3d 1098,1106 (2d Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), and *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994)).

For the reasons given, I find that plaintiff's constitutional rights were not violated at all; it was therefore objectively reasonable for defendants to believe that their actions did not violate

plaintiff's constitutional rights. *See Green v. McGinnis*, 515 F.Supp.2d 379, 384 (W.D.N.Y. 2007). *See also Manning*, 2010 WL 883696, at *11 ("Defendants' reliance on the DOCS GID Policy cannot be said to be other than sincere, even if objectively unreasonable," particularly in light of evidence that defendants sincerely believed that application of policy to plaintiff was medically justifiable, and defendants were therefore entitled to qualified immunity) (internal quotation marks omitted); *Barnhill v. Cheery*, No. 8:06-cv-922-T-23TGW, 2008 WL 759322, at *15 (M.D.Fla. Mar. 20, 2008) (The plaintiff has not cited, and the court has not found, any controlling authority that makes it apparent that ... the Constitution requires the administration of female hormones for a transsexual inmate who was receiving such hormones prior to his incarceration. ... Therefore, the defendants are entitled to qualified immunity with respect to the plaintiff's damage claim").[4]

Finally, I conclude that plaintiff's request for injunctive relief must also be dismissed. As explained above, plaintiff has cited nothing but his own personal opinions to support his contention that he needs hormone therapy, or that defendants have refused to provide any other medically necessary treatment for him. That is not a sufficient basis upon which to grant relief, injunctive or otherwise.

---

[4]My conclusions concerning the merits of plaintiff's claims render it unnecessary for the Court to address defendant LeClaire's argument that plaintiff's claims against him should be dismissed for lack of LeClaire's personal involvement.

**CONCLUSION**

Defendants' motion for summary judgment (Dkt. #32) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       March 31, 2010.